IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEON ALLEN, #N54121, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> vs. ) <br> ) <br> WEXFORD HEALTH SOURCES, INC., ) <br> CHAD JENNINGS, ) <br> DIRECTOR OF NURSING BICKERS, ) <br> and PHIL MARTIN, ) <br> ) <br> **Defendants.** ) | Case No. 24-cv-02381-SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Leon Allen, an inmate in the custody of the Illinois Department of Corrections (IDOC) currently incarcerated at Robinson Correctional Center, filed this action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations stemming from inadequate medical treatment for throat cancer. He seeks money damages and cancer treatment. (Doc. 1). The Complaint is now subject to preliminary review under 28 U.S.C. § 1915A, which requires this Court to dismiss any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant. *Id*.

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 6-7): Plaintiff was diagnosed with throat cancer while he was detained at Winnebago County Jail in January 2023. A CT scan and biopsy confirmed the diagnosis in March 2023, and Plaintiff was scheduled for radiation treatment. Before treatment began, Plaintiff transferred into IDOC custody on May 26, 2023, in spite of a court order that stayed his transfer until he completed treatment for his cancer. *Id*. at 6.

When he arrived at Robinson on June 22, 2023, Plaintiff immediately informed Health Care Unit Administrator Phil Martin and several intake nurses about his diagnosis. They did not believe him. Martin explained that Plaintiff would not be transferred with the diagnosis, and Robinson received no medical records for him. *Id*.

Thereafter, Plaintiff filed sick call requests to seek treatment. Wexford Health Sources, Inc., provided medical staff and services at Robinson, and the private medical corporation used a 3-tiered system for medical appointments. Under this system, a prisoner was first required to see a nurse, then a physician's assistant or nurse practitioner, and, only then, a doctor, if necessary. This approach to medical treatment caused delays in treatment, including a 5-week delay between the date Plaintiff first submitted a sick call request and the date he met with a doctor on July 25, 2023. *Id*.

At this appointment, the doctor investigated Plaintiff's case, located the missing medical records, and confirmed his cancer diagnosis. Plaintiff was sent to an outside cancer specialist, who explained that the 7-month delay in treatment caused his cancer to progress to the point that he needed radiation treatment, surgery, and possibly chemotherapy. The specialist warned that Plaintiff would also undergo significant changes to his voice that could include complete loss. *Id*.

Dr. Casey Duncan was the oncologist assigned to work on Plaintiff's case and ultimately decided that a 28-day radiation treatment regimen could allow Plaintiff to forgo surgery. Plaintiff's radiation treatment began 9 months after his initial diagnosis on September 4, 2023 and concluded October 2, 2023. The oncologist recommended radiation treatment along with close observation and tracking of the patient to monitor the remission or progression of the cancer. *Id*. at 7.

Plaintiff's condition deteriorated following completion of radiation on October 2, 2023. He steadily lost the ability to speak. Some days, he could not speak at all. He also began coughing

up increasing amounts of blood and "necrotic dead tissue." *Id*.

Meanwhile, HCU Administrator Martin and Director of Nursing Bickers "disregarded every aspect of this treatment plan." *Id*. at 7. They were both in charge of scheduling medical appointments, including his follow-up appointments with the oncologist. Both Martin and Bickers ignored the recommendations of the oncologist for these appointments. As a result, Plaintiff missed them. *Id*.

On July 10, 2024, Plaintiff met the prison's doctor, Dr. Thomas, who conceded that Plaintiff's follow up appointments were long overdue. Dr. Thomas ordered an off-site referral, and Bickers stated that one would be scheduled on August 30, 2024. No appointment occurred. Twice, Plaintiff complained about this denial of medical care to Warden Chad Jennings, but the warden took no action to address his concerns. *Id*.

Plaintiff seeks monetary and injunctive relief. Plaintiff claims that without a court order compelling compliance with Dr. Duncan's treatment plan, he faces a high risk of injury or death, in violation of his rights under the Eighth Amendment. *Id*.

## Preliminary Dismissals

Federal Rule of Civil Procedure 10(a) requires a plaintiff to name all parties in the case caption. *See also Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005). Plaintiff mentions several individuals in the statement of his claim who are not identified as defendants, including Dr. Duncan, intake nurses, and others. Because these individuals are not named as defendants, they are not considered parties to this action, and all claims against them are considered **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court designates the following claims:

>   Count 1:   Eighth Amendment claim against Defendants Bickers, Martin, and Jennings for exhibiting deliberate indifference to Plaintiff's throat cancer at Robinson in 2023-24 when they disregarded his diagnosis, delayed his treatment, denied his follow-up care, and thereby exacerbated his condition.
>
>   Count 2:   Eighth Amendment claim against Wexford for causing a delay in Plaintiff's necessary cancer treatment through its 3-tiered approach to care requiring inmates to meet with a nurse, a physician's assistant or nurse practitioner, and, only then, a doctor, if necessary.

**Any other claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).**

To state a colorable claim for the denial of medical care under the Eighth Amendment, a plaintiff must describe: (a) a serious medical need, from an objective standpoint; and (b) deliberate indifference by each defendant. An objectively serious medical need is one that has been diagnosed by a physician as requiring treatment or one where the need for treatment would be obvious to a lay person. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Plaintiff's throat cancer is sufficiently serious to support this claim.

Deliberate indifference occurs when a defendant knows about and disregards an excessive risk to inmate health. *Id*. Treatment delays that exacerbate a serious medical condition may also constitute deliberate indifference. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Plaintiff alleges that Martin failed to verify his cancer diagnosis, ensure prompt treatment, or schedule follow-up care, resulting in treatment delays that caused his cancer to progress. He alleges that Bickers failed to comply with the oncologist's treatment recommendations and failed to schedule follow-up appointments, even as Plaintiff's condition deteriorated. Finally, he alleges that Warden Jennings disregarded his direct pleas for treatment. These allegations suggest that

each individual acted with deliberate indifference to Plaintiff's throat cancer. Therefore, Count 1 will proceed against each of these defendants.

The Eighth Amendment claim against Wexford requires Plaintiff to allege that a policy, custom, or practice attributable to the private medical corporation caused a violation of his constitutional rights. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782,786 (7th Cir. 2014) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978)). Plaintiff alleges that Wexford's 3-step treatment plan caused unnecessary delays in his treatment for cancer that exacerbated his condition. This is sufficient to state a viable claim against Wexford in Count 2.

### Request for Injunction

Plaintiff seeks an Order for compliance with Dr. Duncan's recommended treatment plan. (Doc. 1, pp. 7-8). The Court construes this request for injunctive relief as a "Motion for Preliminary Injunction." Before Defendants can respond to the motion, however, Plaintiff must provide a description of the treatment that has been recommended by his oncologist, denied by defendants, and requires reinstatement at this time.

The Clerk of Court will be **DIRECTED** to **ADD** a Motion for Preliminary Injunction to the docket sheet in CM/ECF, and Plaintiff will have thirty (30) days to file a supporting motion that sets forth the exact relief he requires at this time with supporting facts. Because Plaintiff seeks injunctive relief, Warden Jennings will also remain named as a defendant in an official capacity and will be responsible for implementing any injunctive relief ordered in this action.

### Motion for Recruitment of Counsel

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED without prejudice**. The Court has discretion to recruit an attorney for an individual who cannot hire one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013). When presented with a request for counsel, the court

considers: (1) whether the indigent plaintiff made reasonable attempts to find counsel or was precluded from doing so; and (2) whether the plaintiff appears competent to litigate the case himself, given its factual and legal difficulty. *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021). Plaintiff has demonstrated reasonable efforts to locate counsel and produced copies of the letters he sent and received from attorneys or law firms about in this matter. (Doc. 3, pp. 3-6). However, he also demonstrated his ability to litigate this case *pro se*, for now. Plaintiff's Complaint is very well organized and states claims against each of the defendants. The facts are well within his knowledge, and he has stated them clearly. Both claims are governed by the Eighth Amendment, and Plaintiff has demonstrated his understanding of this legal standard. The case is in its infancy and requires little additional input from him at this time. If it becomes too difficult to litigate as the case proceeds, Plaintiff may file a new motion.

## Disposition

The Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A, as follows:

- **COUNT 1** will proceed against **PHIL MARTIN, BICKERS,** and **CHAD JENNINGS**, in their individual capacities.

- **COUNT 2** will proceed against **WEXFORD HEALTH SOURCES, INC.**

- **ALL OTHER CLAIMS** are **DISMISSED** without prejudice for failure to state a claim.

- **CHAD JENNINGS** will also remain named as a defendant in an official capacity for purposes of implementing any injunctive relief ordered herein.

The Clerk's Office is **DIRECTED** to **ADD** a Motion for Preliminary Injunction to CM/ECF, and Plaintiff may file a supporting motion on or before **December 12, 2024**, if he deems it necessary. If Plaintiff does not file a supporting motion by this deadline, the motion will be dismissed without prejudice to re-filing.

The Clerk shall prepare for **ALL DEFENDANTS**: (1) Form 5 (Notice of a Lawsuit and

Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **Under Administrative Order No. 244, Defendants should only respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even if he is granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of

prosecution. *See* FED. R. CIV. P. 41(b).

**Because the claims in this case arise from the denial of medical care, the Clerk's Office is DIRECTED to ENTER the Court's standard HIPAA-Qualified Protective Order.**

IT IS SO ORDERED.

DATED:   November 12, 2024          *s/ Staci M. Yandle*
                                    **STACI M. YANDLE**
                                    **United States District Judge**

**Notice to Plaintiff**

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter their appearances and file Answers to your Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have all filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' attorneys have filed appearances will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.